# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# HARRISON DIVISION

CHAD AND TONYA RICHARDSON,                                        **PLAINTIFFS**
Individually and As Parents and Next Friends of L.

V.                    CASE NO. 3:17-CV-03111

OMAHA SCHOOL DISTRICT;
JACOB SHERWOOD, Superintendent;
AMANDA GREEN, Principal;
and DAWN DILLON, Teacher                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are a Motion for Partial Dismissal (Doc. 5) and Brief in Support (Doc. 6) filed by Defendants Omaha School District, Jacob Sherwood, Amanda Green, and Dawn Dillon; a Response in Opposition (Doc. 12) and Brief in Support (Doc. 13) filed by Plaintiffs Chad and Tonya Richardson; and Defendants' Reply (Doc. 18). On February 12, 2018, the Court held a hearing on the Motion, and the parties had the opportunity to present oral argument. For the reasons given below, the Motion for Partial Dismissal (Doc. 5) is **GRANTED**.

## I. BACKGROUND

This lawsuit arises from an administrative appeal of claims made before the Arkansas Department of Education ("ADE") by a disabled student, "L" ("Student"), who attended school in the Omaha School District ("the District"). Plaintiffs filed a due process complaint before the ADE on November 19, 2016, alleging that the District had failed to provide Student with a free, appropriate public education, in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* The

1

parties participated in a hearing before a hearing officer appointed by the ADE, and the hearing officer issued her Final Decision and Order on the due process complaint on April 14, 2017. *See* Doc. 1-2.

On July 13, 2017, Plaintiffs filed a lawsuit in this Court, seeking judicial review of the hearing officer's decision. Plaintiffs asserted a single claim in that lawsuit, and hereafter, the Court will refer to this earlier-filed case as "*Richardson I*." *See* Case No. 3:17-CV-3053. In *Richardson I*, Plaintiffs' counsel argued that although Student and his parents had prevailed on some issues before the hearing officer, they had lost on other issues. Therefore, for purposes of the administrative appeal, Plaintiffs wished the Court to consider them the "aggrieved party," as that term is defined in the IDEA. *See* 20 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the [hearing officer's] findings and decision . . . [has] the right to bring a civil action with respect to the complaint.").

Plaintiffs argued in *Richardson I* that the hearing officer found that the District had committed certain wrongdoing with respect to Student's educational plan, and the hearing officer made the following findings in Plaintiffs' favor: (1) the District failed to conduct a comprehensive evaluation of Student, (2) the District provided Student with inappropriate Individual Education Plans ("IEPs") for three consecutive years while Student was enrolled in school, (3) Student regressed in the last two years he was in school, (4) Student's IEPs were not reasonably calculated to enable him to make appropriate progress, and (5) Student's IEPs lacked provisions for social skills training and social skills goals.

Despite these favorable findings, Plaintiffs disagreed with certain other findings the hearing officer made, which were *not* in their favor, including that: (1) the District had educated Student in the least restrictive learning environment, and (2) the District provided an appropriate education to Student while the administrative appeal was pending. The Court also believes it likely that Plaintiffs disagreed with some of the hearing officer's key factual findings in *Richardson I*, namely, that Student's teacher, Dawn Dillon, did *not* bully Student or allow bullying in her class, and that Superintendent Jacob Sherwood and Principal Amanda Green conducted thorough investigations into Student's bullying allegations.

*Richardson I* was ultimately dismissed because Plaintiffs never served the District with the complaint. The Court dismissed the case without prejudice on November 8, 2017. The Court noted in its dismissal order that it appeared that Plaintiffs might be barred from refiling their IDEA claim due to the running of the statute of limitations, as Plaintiffs' counsel had filed *Richardson I* on the last day of the 90-day deadline to appeal the hearing officer's decision. *See* Doc. 7, Case No. 3:17-CV-3053.

Nonetheless, on December 4, 2017—nearly a month after *Richardson I* was dismissed—Plaintiffs filed the instant case, which the Court will call "*Richardson II*." *Richardson II* is different than *Richardson I*, at least in terms of the causes of action asserted and the defendants sued. Whereas *Richardson I* characterized Plaintiffs as the "aggrieved party" and requested district court review of the hearing officer's substantive findings, *Richardson II* does not request such review (as it is time-barred) and instead asserts in Count I that Plaintiffs were the "prevailing party" at the

administrative level and are now entitled to attorney fees. *Richardson II* names not only the District as a Defendant, but also Jacob Sherwood, who is the District's Superintendent and the CEO of the District's Board of Education, Amanda Green, who is Principal of Omaha Elementary School, where Student attended, and Dawn Dillon, who was Student's fifth and sixth grade science teacher. In addition, the Complaint now before the Court in *Richardson II* provides more details about Student and his educational experiences than *Richardson I*, as well as eight new causes of action.

In particular, Count II of the *Richardson II* Complaint alleges that the District discriminated against Student in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* Plaintiffs believe the District had knowledge that other children were bullying Student because of his disabilities, but the District took no steps to protect him. Plaintiffs therefore accuse the District of being deliberately indifferent to the bullying.

Count III is similar to Count II in that it alleges that the District discriminated against Student in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, in that Student did not receive the same services, programs, and activities that children without disabilities received, due to the fact that Student was subjected to a hostile and bullying environment at school, and the District failed to stop it.

Count IV is a 42 U.S.C. § 1983 claim based on "state-created danger," and is asserted against the District and Defendants Sherwood, Green, and Dillon, in their individual and official capacities. The "state-created danger" described here is the bullying.

4

Count V is another Section 1983 claim for "supervisory liability for participation in and encouragement of unconstitutional misconduct by subordinates"—another Due Process claim. *See* Doc. 1 at 21. This claim is asserted against Sherwood, who has supervisory authority over all District employees, and against Green, who has supervisory authority over Dillon. Plaintiffs' legal theory in Count V is that Sherwood and Green knew, or should have known, that their subordinates were "unconstitutionally placing L in a place of harm where he would be subjected to ongoing, and targeted bullying and the resulting foreseeable deprivations of L's Constitutional rights to a public education, to bodily integrity, to be secure and to be left alone free from bullying and harassment, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States." *Id.* at 22. Count V also cites the District's failure to investigate an incident that took place at school on October 6, 2016, when Student had a major seizure in Dillon's science class and never came back to school after that. Plaintiffs complain that the District failed to enforce its no-bullying policies, was deliberately indifferent to bullying, refused to implement effective bullying-prevention strategies, and tacitly authorized bullying in the schools through inaction.

Count VI is another Section 1983 claim, lodged only against the District, for denial of Due Process due to the District's alleged failure to train and supervise its teachers to prevent and stop bullying.

Count VII is similar to Count VI, in that Count VII is also a Section 1983 claim lodged against the District for having a policy, custom, or practice of failing to respond to or prevent bullying in its schools. The Count claims there is a persistent pattern of

inappropriate responses to bullying by the District, but offers no specific examples of such bullying other than Student's.

Count VIII is for punitive damages against all Defendants, as Plaintiffs maintain that all Defendants committed willful, wanton, and malicious acts against Student; and Count IX is the state law tort of intentional infliction of emotional distress, again asserted against all Defendants.

Defendants jointly filed a Motion for Partial Dismissal (Doc. 5), seeking to dismiss all Counts but II and III.  In addition, or perhaps in the alternative, Defendants argue that the individual Defendants are entitled to qualified immunity.  The Motion is now ripe for consideration.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court must accept as true all factual allegations set forth in the Complaint by the plaintiff, drawing all reasonable inferences in the plaintiff's favor.  *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* In other words, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

## III. DISCUSSION

### A. Count I: Attorney Fees for Prevailing at the Administrative Level

Defendants argue that Count I, in which Plaintiffs request attorney fees for prevailing at the administrative level, should be dismissed as time-barred. The Eighth Circuit has yet to announce a particular deadline by which a prevailing party must file a request for attorney fees related to work incurred at the administrative level on an IDEA claim. Certainly, the parties here are in agreement that a party aggrieved by a hearing officer's findings has a maximum of 90 days to appeal to the district court, or else the findings are deemed final. But how long should the prevailing party have *after the findings are deemed final* to request attorney fees from the district court?[1] Plaintiffs argue they should have three years to request such fees, while Defendants argue they should have 90 days. In the absence of Eighth Circuit guidance, this Court must arrive at a reasonable decision on its own.

---

[1] Under the IDEA, a party is considered to have "prevailed" "if it succeeded on any significant issue which achieved some of the benefit it sought." *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1377 (8th Cir. 1996).

7

In the case at bar, the hearing officer's final decision was entered on April 14, 2017. The aggrieved party then had 90 days to appeal the decision—or until July 13, 2017. *See Brittany O v. Bentonville Sch. Dist.*, 683 F. App'x 556, 557 (8th Cir. 2017) (per curiam) (finding that in Arkansas, "any party aggrieved . . . shall have 90 days from the date of the hearing officer's decision to bring a civil action in a court of competent jurisdiction pursuant to the IDEA"). Plaintiffs never successfully appealed the hearing officer's final decision. They filed *Richardson I*, but they never served it, and it was dismissed by the Court. Therefore, in the absence of any ongoing appeal, the hearing officer's decision became final as of July 13. Defendants contend that if Plaintiffs had determined that they did, in fact, prevail at the administrative level, they were required to request attorney fees of the district court no later than 90 days after the hearing officer's decision became final, or by October 11, 2017. Instead, Plaintiffs filed their fee request in the instant case on December 4, 2017.

Although Defendants concede that the IDEA doesn't expressly state when a prevailing party must make its request for fees, they believe the Eighth Circuit in *Brittany O v. Bentonville School District* tacitly agreed—or at least did not explicitly disagree with the district court's opinion in that case—that the same 90-day statute of limitations that applies to filing IDEA appeals should also apply to filing requests for attorney fees. In *Brittany O.*, the Eighth Circuit specifically stated that it "need not decide" the appropriate statute of limitations applicable to a request for attorney fees pursuant to the IDEA. 683 Fed. App'x at 558. At the same time, the Eighth Circuit did not explicitly overrule the reasoning of the Honorable J. Leon Holmes, United States District Judge for the

Eastern District of Arkansas, who analyzed the issue at an earlier stage of the litigation and came to the conclusion that a 90-day limitations period for filing attorney fee claims was reasonable. *See Brittany O. v. Bentonville Sch. Dist.*, 2015 WL 284971, at *6-7 (E.D. Ark. Jan. 22, 2015).

Judge Holmes drew insight from opinions authored by the Sixth and Seventh Circuits and found that "a claim for attorneys' fees arising out of a due process hearing under the IDEA is ancillary to the administrative action and therefore should be governed by the state statute of limitations that governs appeals from administrative decisions." *Id.* at *6 (citing *King v. Floyd Cnty. Bd. of Educ.*, 228 F.3d 622, 625-26 (6th Cir. 2000); *Powers v. Ind. Dep't of Educ.*, 61 F.3d 552, 556-59 (7th Cir. 1995)). Judge Holmes reasoned that adopting plaintiff Brittany O.'s suggested three-year statute of limitations to file an attorney fee claim—which Plaintiffs also suggest in the case at bar—

> would create a risk of piecemeal litigation inasmuch as, on that argument, as to the issues on which the party to a due process hearing is aggrieved, an action must be brought within ninety days of the hearing officer's decision, whereas a claim for attorneys' fees arising out of the same hearing could be commenced as much as three years after the decision.

*Id.* at *7.

He then quoted a district court of Massachusetts case, *B.D. ex rel. Doucette v. Georgetown Public School District*, 2012 WL 4482152, at *9 (D. Mass. Sept. 27, 2012), for the following logical proposition:

> "There is no good reason why the statute of limitations for an action to recover fees that depend upon an agency's decision, should be longer than an appeal of the merits of the decision itself."

9

*Brittany O.*, 2015 WL 284971, at *7 (quoting *Doucette*, 2012 WL 4482152, at *9). Accordingly, Judge Holmes determined that a 90-day statute of limitations was "ample time for the parents to prepare a claim for attorneys' fees and present it to the district court," particularly given the fact that 90 days "is specific to claims under the IDEA" and "will avoid piecemeal litigation and ensure that all claims related to the due process hearing would be brought in a single action." *Id.* at *7.

This Court agrees with Judge Holmes' reasoning as to the appropriate limitations period for a prevailing party to file a claim for fees, subsequent to an IDEA administrative hearing. Simply put, it defies logic that the time to file a claim for fees would be longer than the time to file a substantive appeal of the hearing officer's decision. A claim for fees is merely ancillary to the administrative action itself, and it follows that, if anything, a prevailing party should be required to file his claims for fees *in less time* than he did the underlying appeal—but certainly not more. As the Court of Appeals has already approved a 90-day limitation period for filing an underlying appeal, this Court finds that a 90-day limitation period for filing a claim for fees is eminently fair and reasonable, and also promotes judicial efficiency and encourages the swift administration of justice and the preservation of evidence. This is because attorney fee claims cannot be evaluated in a vacuum, but instead must be tested for reasonableness in the context of the work performed by the attorney at the administrative level below. The time to file a claim for fees for prevailing at the administrative level should correlate closely to the time to file an appeal of the hearing officer's final decision, so there are no

significant gaps in time between the district court's consideration of the merits decision and the fee decision.

Since Plaintiffs' claim for attorney fees in the case at bar was brought 144 days after the hearing officer's decision became final, it was brought too late. Count I is time-barred and will be dismissed with prejudice.

### B. Count IV: State-Created Danger

Count IV is a 42 U.S.C. § 1983 claim based on "state-created danger," against the District and Defendants Sherwood, Green, and Dillon, in their individual and official capacities. To prevail on a state-created danger claim under Section 1983, a plaintiff must demonstrate: (1) that he is a member of a limited, precisely-definable group; (2) that the defendants' conduct put him at significant risk of serious, immediate, and proximate harm; (3) that the risk of harm was obvious or known to the defendants; (4) that the defendants acted recklessly in conscious disregard of the risk; and (5) that the defendants did so in a way that shocks the conscience. *See Avalos v. City of Glenwood*, 382 F.3d 792, 798-90 (8th Cir. 2004) (internal citations omitted).

Here, assuming for the sake of argument that Student qualifies under the first part of the *Avalos* test as "a member of a limited, precisely definable group," the Complaint fails to allege any facts that would show that any Defendant acted affirmatively and recklessly to put Student at serious risk of harm, in a manner that would shock the conscience.

Defendants cite to an analogous school-bullying case out of the Third Circuit called *Morrow v. Balaski*, 719 F.3d 160, 164 (3d Cir. 2013). In that case, parents of two

bullied children sued the school under Section 1983 on a state-created danger theory, and the case was dismissed because the court found that *the school* did not create the danger to the students. *The bully* did. *See id.* at 176 (finding that child bullies did not act under authority delegated by the school or exercise coercive power with significant encouragement from the school; and even if the school's response to the bullying "may well have been . . . inadequate," no constitutional remedy existed). The Third Circuit further held that a school's "passive inaction" in the face of bullying, either by not enforcing a no-bullying policy or in failing to effectively stop individual bullying, was not the same as the school committing an affirmative act to create a danger to a student. *See id.* at 179.

Even if the Court were to assume the allegations in the Complaint are true, they fail to establish facts sufficient to show that the District or any of its employees acted in a manner that was reckless, rather than negligent, and that the actions shocked the conscience. Plaintiffs maintain that Defendants knew or should have known that "a culture of bullying existed within the School District and specifically at Omaha Elementary School." (Doc. 1, p. 19). They also charge Defendants with knowing that Student was "the victim of daily abuse, harassment, and torment by his classmates for years," *id.* at 20, and that teachers discouraged Student from reporting the abuse by calling him a "tattletale" and "refusing to take corrective action once the bullying was reported," *id.* Importantly, the specific incidents of bullying described in the Complaint are limited to classmates calling Student names or generally "ridicul[ing] him and mak[ing] fun of him," *id.* at 6, and a single teacher—or perhaps more than one teacher,

12

as the Complaint is unclear on this point—either calling Student a tattletale for reporting the bullying, *id* at 7-8, or "forcing L to sit in a beanbag chair in the middle of the classroom," *id.* at 8.  Aside from being far from conscience-shocking, such incidents of "bullying" by teachers and administrators are described in a vague and conclusory manner, unsupported by actual facts.

During the Motion hearing, the Court informed counsel for Plaintiffs that it did not appear from the face of the Complaint that Plaintiffs had asserted any "conscience-shocking" facts that would constitute affirmative acts by the District or its employees. The Court then gave Plaintiffs' counsel—or her clients, who were present at the hearing—an opportunity to state in open court any other facts they knew of that would be conscience-shocking, aside from forcing Student to sit on a beanbag chair or calling him a tattletale.  In the end, Counsel and the parties were unable to provide any other facts.  Count IV is therefore dismissed for failure to state a claim.

### C. Count V: Supervisory Liability

Count V is a Section 1983 Due Process claim that charges Sherwood and Green with supervisory liability for participation in and encouragement of unconstitutional misconduct by subordinates.  Plaintiffs believe that Sherwood and Green knew, or should have known, that their subordinates were "unconstitutionally placing L in a place of harm where he would be subjected to ongoing, and targeted bullying and the resulting foreseeable deprivations of L's Constitutional rights to a public education, to bodily integrity, to be secure and to be left alone free from bullying and harassment, and

13

to substantive due process under the Fourteenth Amendment to the Constitution of the United States." (Doc. 1 at 22).

"Supervisory school officials. . . can be liable under § 1983 only if they are deliberately indifferent to acts committed by a teacher that violate a student's constitutional rights." *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010). To establish a claim based upon a supervisor's deliberate indifference, a plaintiff must show that the supervisor defendant: (1) had notice of a pattern of unconstitutional acts of a subordinate; (2) showed deliberate indifference to those acts; (3) and failed to take sufficient remedial action; (4) which proximately caused injury to the plaintiff. *Id.* (citing *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (holding that deliberate indifference is a stringent standard of fault that cannot be predicated upon mere negligence).

In *Gebser v. Lago Vista Independent School District,* the Supreme Court held that in order for a school official tasked with reviewing complaints to be liable under Title IX, that "official must have actual knowledge of discrimination and fail adequately to respond." *Gebser*, 524 U.S. 274, 290-91 (1998).

The Complaint is devoid of facts that would indicate that Sherwood, Green, or any teacher who was subordinate to them actually bullied Student. There are also no facts that would indicate that Sherwood and/or Green knew of such "bullying" by teachers and were deliberately indifferent to it. None of the acts alleged in the Complaint to have been committed by teachers can be construed as ones that violated Student's constitutional rights: the facts simply do not rise to that level of detail or severity. Count V is dismissed for failure to state a claim.

### D. Count VI: Failure to Train and Supervise

Count VI is another Section 1983 claim, lodged only against the District, for denial of Due Process due to the District's alleged failure to train and supervise its teachers to prevent and stop bullying. "To establish a substantive due process violation, a plaintiff must plausibly allege 'both that the official's conduct was conscience-shocking and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 816 (8th Cir. 2011). Defendants argue here that the facts in the Complaint to support Count VI fail to establish that the District's behavior was conscience-shocking. For the reasons stated previously, the Court agrees.

Furthermore, the elements of a failure-to-train claim under Section 1983 require proof that: (1) the training practices were inadequate, (2) the school was deliberately indifferent to the rights of students, such that the failure to train reflected a deliberate choice, and (3) the failure to train caused the plaintiff's injuries. *B.A.B. v. Bd. of Educ. of City of St. Louis, Mo.*, 698 F.3d 1037, 1040 (8th Cir. 2012).

Along with the lack of conscience-shocking facts in the Complaint that would implicate Defendants, Plaintiffs have also failed to sufficiently allege facts that would indicate that school officials were deliberately indifferent to bullying within the schools, or that the District *deliberately chose* to train its teachers to ignore bullying. For these reasons, the claim in Count VI is dismissed without prejudice.

## E. Count VII: Policy, Custom, or Practice

Count VII is a Section 1983 claim against the District for having a policy, custom, or practice of failing to respond to or prevent bullying in its schools. "To establish the existence of a policy, custom or failure to receive, investigate, or act on complaints of violations of constitutional rights, a plaintiff must prove:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 (8th Cir. 1990).

Plaintiffs fail to reference in their Complaint a persistent pattern of inappropriate responses to bullying. Instead, they cite only to Student's example. It is difficult to argue that one student's example of bullying, if true, would amount to a policy, custom, or practice of the District of failing to respond to student bullying. Plaintiffs simply assume, without providing any facts to support their assumption, that there is a District-wide policy or practice of ignoring bullying. In general, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Here, Plaintiffs are unable to state facts

that would plausibly show the existence of a persistent pattern of abuse or tacit authorization of alleged abuse. Count VII is dismissed for failure to state a claim.

### F. Count VIII: Punitive Damages

Plaintiffs maintain that all Defendants committed willful, wanton, and malicious acts against Student. Exactly what those willful, wanton, and malicious acts are is a mystery, despite the length of the 34-page Complaint. Plaintiffs' claim that Defendants intentionally or deliberately failed to take action in response to bullying is not supported by any facts in the Complaint and fails to meet the pleading standards of Rule 12(b)(6), and the guidance in *Iqbal* and *Twombly*. Count VIII is dismissed without prejudice.

### G. Count IX: Intentional Infliction of Emotional Distress (Outrage)

Count IX is the state law tort of intentional infliction of emotional distress. In Arkansas, this tort is called "outrage." Defendants argue that no allegations in the Complaint rise to the level of the tort of outrage. Further, they contend that this tort claim would be barred by sovereign immunity.

The tort contains the following four elements: (1) the defendant intended to inflict emotional distress or should have known that emotional distress was the likely result of its conduct; (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it. *Crockett v. Essex*, 341 Ark. 558, 563-64 (2000).

In the case at bar, there do not appear to be any facts that would demonstrate intentional, extreme, or outrageous conduct on the part of any of the Defendants. Further, Arkansas courts have interpreted very narrowly what would qualify as "outrageous" conduct that would state a valid claim. Putting aside the sovereign immunity question, the Court rejects Plaintiffs' argument that the facts here state a claim for outrage under Arkansas law. Count IX is dismissed without prejudice.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Partial Dismissal (Doc. 5) is **GRANTED**. Count I is **DISMISSED WITH PREJUDICE**, due to the running of the statute of limitations, and Counts IV, V, VI, VII, VIII, and IX are **DISMISSED WITHOUT PREJUDICE**, pursuant to Rule 12(b)(6), for failure to state a claim. Only Counts II and III remain for resolution, and both of those Counts are brought explicitly against Defendant Omaha School District and no other Defendant. Accordingly, separate Defendants Jacob Sherwood, Amanda Green, and Dawn Dillon are **DISMISSED** as parties to the action, and the Clerk of Court is directed to terminate them from the case.

**IT IS SO ORDERED** on this 22nd day of March, 2018.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE