IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHAD AND TONYA RICHARDSON,
Individually, and as Parents and
Next Friends of L.                                                    PLAINTIFFS

V.                    CASE NO. 3:17-CV-03111

OMAHA SCHOOL DISTRICT                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are Defendant Omaha School District's ("the District") Motion for Summary Judgment (Doc. 36), Statement of Facts (Doc. 37), and Brief in Support (Doc. 38); Plaintiffs Chad and Tonya Richardson's Response in Opposition (Doc. 41) and Statement of Facts (Doc. 42); and the District's Reply (Doc. 47). For the reasons explained below, the Motion is **GRANTED**.

### I. BACKGROUND

The Richardsons, individually and on behalf of their child, L., filed a due process complaint on November 29, 2016, before the Arkansas Department of Education, concerning claims brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* The Richardsons alleged in their due process complaint that L., while attending school in the District, was denied the right to a free, appropriate public education ("FAPE"). The parties participated in a due process hearing before a hearing officer appointed by the Arkansas Department of Education, and the hearing officer issued his final decision on April 14, 2017.

On July 13, 2017, the Richardsons appealed the hearing officer's decision to this Court in Case No. 3:17-CV-3053. The hearing officer had found in their favor on some of

their claims, but in favor of the District on other claims. In particular, the hearing officer concluded that the "District denied [L] FAPE between November 29, 2014 and November 29, 2016 by failing to comprehensively reevaluate [L], as well as failing to provide IEPs ["Individualized Education Program"] reasonably calculated to enable [L] to make progress appropriate in light of his specific circumstances." (Doc. 1-2 at 51). The District was ordered to evaluate L. within the next 30 days "for [the] purpose of obtaining a comprehensive understanding of [L's] academic, social and behavioral deficits" and then "reconvene [L's] IPE team to develop and update [L's] IEP based on the information received from the updated evaluations (regardless of whether [L] is able to return to school or whether he needs homebound services)." *Id.* at 51-52.

The Richardsons lost before the hearing officer on their claims that peer-bullying and teacher-bullying of L. denied him FAPE under the IDEA. *See id.* at 43. Of the four incidents of bullying raised during the hearing, the hearing officer determined that only one of the incidents actually qualified as bullying. He concluded that, "[r]egardless, all incidents were promptly and thoroughly investigated." *Id.* at 47. The hearing officer then made a finding that the incidents described as "bullying"—and the District's response to those incidents—did not violate the IDEA and "d[id] not constitute a violation of FAPE." *Id.* at 48.

This Court ultimately dismissed Case No. 3:17-CV-3053 without prejudice because the Richardsons never served the Complaint. *See* Doc. 7, Case No. 3:17-CV-3053. Then, on December 4, 2017, the Richardsons filed the instant lawsuit and served it. Eventually, the District and the other defendants who had been named in the Complaint

2

filed a motion for partial dismissal of some of the Richardsons' claims. The Court granted the motion in a Memorandum Opinion and Order issued on March 22, 2018 (Doc. 23).

Count I of the Complaint was dismissed with prejudice, due to the running of the statute of limitations.[1] Counts IV-IX were dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. This left for later resolution Counts II and III—which are now the subject of the District's Motion for Summary Judgment.

Count II asserts that the District discriminated against L. in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* ("§ 504"). The Richardsons contend that the District was aware that L. was being bullied by other children and by at least one of his teachers due to his disabilities, but was deliberately indifferent to the bullying and took no steps to protect L. Count III is similar to Count II in that it alleges that the District discriminated against L. in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131-12165. The Richardsons maintain that L. did not receive the same services, programs, and activities that children in the District without disabilities received, due to the fact that L. was subjected to a hostile and bullying environment at school.

Section 504 and the ADA contain exceedingly similar prohibitions on disability discrimination. Section 504 states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from

---

[1] Count I was a request by the Richardsons for attorney's fees for prevailing at the administrative level on the issue of L. being denied FAPE due to the District's failure to comprehensively evaluate him and provide reasonable IEPs. The Court dismissed the request for fees as time-barred, noting that "the parties here are in agreement that a party aggrieved by a hearing officer's findings has a maximum of 90 days to appeal to the district court, or else the findings are deemed final." (Doc. 23 at 7). Since the Court concluded that the Richardsons brought their claim for attorney's fees 144 days after the hearing officer's decision became final, the claim was filed too late and was dismissed with prejudice on that basis. *See id.* at 11.

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 29 U.S.C. § 794. The ADA's corresponding language states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132.

On summary judgment, the District argues that the Richardsons have produced no evidence from which a jury could reasonably conclude that the District and its staff are liable for violations of the Rehabilitation Act or the ADA by deviating from accepted professional practices or standards in their response to allegations of bullying. The District further contends that there is no evidence to suggest the District acted in bad faith with respect to complaints of bullying or that it engaged in intentional wrongdoing in handling the bullying claims. In making these arguments, the District relies primarily on the administrative hearing officer's decision, which considered and rejected the Richardsons' claims that L. was denied FAPE due to bullying and/or the District's lack of an appropriate response to bullying.

On summary judgment, the Richardsons focus not on bullying, but on the hearing officer's conclusion that the District failed to conduct proper educational assessments and provide IEPs that were suited to L.'s needs. The Richardsons' briefing makes clear that they believe Counts II and III do not have much, if anything, to do with bullying. In fact,

no facts or legal argument about bullying are contained in their brief and statement of undisputed facts.[2]

Though the Richardsons agree that the District has referred in its opening brief to the facts surrounding the bullying allegations that were developed in the administrative hearing, they think that mere references to the hearing officer's opinion are not enough to meet the District's initial burden under Rule 56. Instead, they argue that the District was obligated on summary judgment to cite to specific "actions taken by the school and its employees, as well as an explanation for the alleged reasonableness of those actions," (Doc. 41 at 5), in order to trigger a fulsome response. To summarize, then, the Richardsons maintain they are not obligated to provide any facts to support their claims on Counts II and III, but if they are wrong and a response is required, the only facts that truly matter are those that show the District's failure to evaluate L. for services and provide him with an appropriate IEP. The Court will take up the parties' arguments on summary judgment below.

## II. LEGAL STANDARD

### A. Summary Judgment

The legal standard for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] Also attached to their brief are complete transcripts of the depositions of Tonya and Chad Richardson. However, the Richardsons' brief and statement of facts in support of their response to summary judgment fail to cite the Court to any portion of either deposition that refers to bullying. Indeed, the brief cites to *no portion of either parent's testimony at all.* See Doc. 41 at 10 (making only the following oblique reference to the Richardsons' depositions: "*see generally* Ex. B (Deposition of Tonya Richardson); Ex. C (Deposition of Chad Richardson)").

5

judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

The movant's initial burden on summary judgment is "far from stringent, for it is sufficient if the movant points out that the record does not contain a genuine issue of material fact and identifies that part of the record which bears out his assertion." *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (internal quotation marks and alterations omitted). But "[e]ven when the non-movant bears the burden of proof at trial, simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." *Id.* (internal quotation marks omitted).

### B. Elements of § 504 and ADA Claims

"To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998) (footnote omitted) (citing 29 U.S.C. § 794(a)). Section 504 requires that "'a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff,'" *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006) (emphasis in original). "Although

the ADA has no federal funding requirement, it is otherwise similar in substance to the Rehabilitation Act, and cases interpreting either are applicable and interchangeable." *Wojewski*, 450 F.3d at 344 (internal quotation marks omitted); *see also Hoekstra by & through Hoekstra v. Indep. Sch. Dist. No. 283*, 103 F.3d 624, 626 (8th Cir. 1996) ("[E]nforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504[.]").

When both § 504 and ADA claims are asserted against a defendant based on a failure to provide educational services for a disabled child, "the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). In order to establish bad faith or gross misjudgment, a plaintiff must show that the defendant's conduct "depart[ed] substantially from 'accepted professional judgment, practice or standards [so] as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment.'" *B.M. ex rel. Miller v. S. Callaway R–II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (internal citations omitted; alterations in original). As the Eighth Circuit has explained:

> Because the ADA and § 504 do not create general tort liability for educational malpractice, bad faith or gross misjudgment requires something more than mere non-compliance with the applicable federal statutes. The defendant's statutory non-compliance must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent.

*Id.* (internal citations omitted and cleaned up).

Further, to recover compensatory damages under § 504 or the ADA, a plaintiff must establish discriminatory intent. *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (holding discriminatory intent may be inferred by deliberate indifference to the fact a given action will result in violation of federally protected rights). And even though

7

neither § 504 nor the ADA contains an exhaustion requirement, if a plaintiff brings a claim under either statute seeking relief that is available under the IDEA, the plaintiff must first exhaust the administrative remedies available under the IDEA before filing suit in court. *B.M. ex rel. Miller*, 732 F.3d at 886 n.3.

## III. DISCUSSION

### A. The District's Initial Burden of Proof Under Rule 56

A threshold issue to address is the Richardsons' argument that the District failed to meet its initial burden of proof under Rule 56, such that the Richardsons were not even obligated to respond to the motion with their own interpretation of the facts and their own legal arguments to justify denying the request for summary judgment. *See* Doc. 41 at 5-6.

The only claims left in the case, Counts II and III, do appear to turn on the Richardsons' assertion that L. was bullied by other students and perhaps some teachers, and that the bullying and the District's lack of appropriate response constituted disability discrimination in violation of § 504 and the ADA. However, the Richardsons maintain on summary judgment that there is more to their § 504 and ADA discrimination claims than just the bullying allegations. At the same time, the Richardsons do not dispute the District's statement that all facts about bullying and the District's response to bullying were raised during the administrative hearing, and no new facts about bullying have been revealed since then. The Richardsons do not discuss the alleged bullying incidents in their brief, and they do not attempt to add new facts about bullying to the summary judgment record, other than the facts that are recited in the hearing officer's opinion. The hearing officer made specific findings about bullying in his opinion, concluding that those

allegations did not amount to a violation of the IDEA or a deprivation of FAPE. Presumably, the Richardsons disagree with that conclusion, but they offer no facts and no legal argument to counter it.

The District begins its brief in support of summary judgment by observing that the facts about bullying that exist in the administrative record are the *only facts* about bullying that support Counts II and III. The District then goes on to explain why those same facts are insufficient to establish a violation of § 504 or the ADA as a matter of law. All of that is enough to meet the District's initial burden on summary judgment. In citing to the facts on bullying that exist in the administrative record, the District has made an adequate "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

### B. The Nature of the Discrimination Claims in Counts II and III

Another threshold issue is whether the disability discrimination alleged in Counts II and III of the Complaint refers only to bullying, or refers to bullying and something else. The Richardsons criticize the District's "laser-focus on bullying" and contend that the District has ignored their other proof supporting Counts II and III, namely, the District's "innumerable failures in providing an education to L. as required by law." (Doc. 41 at 8). It appears the Richardsons have assumed—without explanation—that these educational failures amount to violations of § 504 and the ADA. But the Complaint at Counts II and III certainly makes claims about bullying. Paragraph 62, describing Count II, states: "The frequency and extent *of the disability-based abuse L. suffered at the hands of his peers and teachers* denied L. full participation and benefits of his education." (Doc. 1 at 15

9

(emphasis added)). Paragraph 64, also describing Count II, identifies the source of the disability discrimination alleged as peer-to-peer and teacher-to-student bullying: "L. was being discriminated against based on his disability, *by his peers and teachers*; yet the school district was deliberately indifferent to the discrimination." *Id.* at 16 (emphasis added). Moreover, although Count II mentions the fact that L. "required language and other related services to address his disabilities," the Complaint does not claim that L. suffered disability-based discrimination as a result of the District's failure to provide those services; instead, the Complaint explains that the reason why "L. failed to benefit educationally and his skills actually regressed" was "*because of the abuse, torment and harassment by his peers* which increased as he progressed through school." *Id.* at 14 (emphasis added).

Turning to Count III, which charges disability discrimination under the ADA, Paragraph 74 of the Complaint states: "The District has failed their responsibilities under Title II to provide services, programs, and activities in a full and equal manner to L. and *free from abuse, oppression, discrimination, and exclusion as a result of his disabilities.*" *Id.* at 18. Then, Paragraph 75 states: "The Third-Party Defendant District has further failed their responsibilities under Title II to provide services, programs, and activities in a full and equal manner to children with disabilities and specifically L., as described herein *by subjecting L to an oppressive, inappropriate, hostile, and abusive educational environment* solely based on his disability." *Id.* (emphasis added).

The Richardsons contend that (despite what the Complaint may focus on) the District's failure to comprehensively evaluate L. for services and provide him with IEPs reasonably calculated to enable him to make educational progress was what actually

10

violated § 504 and the ADA. Therefore, in ruling on the District's motion for summary judgment, the Court will assume that the bullying claims and the "failure to educate" claims explained in the hearing officer's opinion form twin bases for the substantive law violations asserted in Counts II and III.

With all of that said, what the Court will *not* consider is the Richardsons' contention that the instant claims against the District arise out of the District's "failure to develop or otherwise implement an appropriate IEP as directed by the hearing officer" *after the hearing officer's decision was published*. (Doc. 41 at 8). According to the Richardsons, these new failures on the part of the District include not implementing appropriate IEPs *after the hearing officer directed the District to do so, see id.* at 8-9, and not providing L. with homebound services, appropriate homework, benchmark testing, or subject-by-subject grade level assessments *after the time period considered by the hearing officer in the context of the administrative hearing, see id.* at 9-10.

Even though neither § 504 nor the ADA contains an exhaustion requirement, the law is clear that "a party must exhaust the administrative remedies available under the IDEA before bringing a claim under a different statute seeking relief that is also available under the IDEA." *B.M. ex rel. Miller*, 732 F.3d at 886 (citing *J.B. ex rel. Bailey v. Avilla R–XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013)); see also 20 U.S.C. 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall

be exhausted to the same extent as would be required had the action been brought under this subchapter.").

The Richardsons' post-hearing claims about violations of § 504 and the ADA must be exhausted in a separate administrative hearing before the Arkansas Department of Education before those claims may be brought to federal court. The Richardsons advised the Court in another document filed of record (Doc. 52, Plaintiffs' Reply in Support of Motion for Leave to Amend Complaint) that they had already submitted a second due process complaint (Doc. 48-1) to the Arkansas Department of Education, listing all the District's alleged failures to comply with the hearing officer's order after the decision was issued.[3] The Richardsons explained that they believed they were required to file this second due process complaint "to preserve their rights." (Doc. 52 at 3). The Court agrees.

According to the Supreme Court's decision in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 755 (2017), when "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE," even if the claims are brought under a statute other than the IDEA (such as § 504 of the Rehabilitation Act or the ADA), the claims must first be exhausted in an administrative hearing before being brought to court, as per Section 1415(l) of the IDEA. The *Fry* Court pointed out that "a plaintiff's initial pursuit of the IDEA's administrative remedies can serve as evidence that the gravamen of her later suit is the denial of a FAPE, even though that does not appear on the face of her complaint." *Id.* at 758. So, it follows that a plaintiff

---

[3] In fact, all the facts listed in the Richardson's response to summary judgment that cover the time period after the hearing officer's decision appear, verbatim, in the second due process complaint. See Doc. 48-1 at 6-7.

cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs in *Smith*[4] claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required.

*Id.* at 754.

In the case at bar, the new, post-hearing claims asserted by the Richardsons are not distinctly § 504 or ADA claims, but instead bear a close resemblance to their IDEA claims brought in the first administrative hearing, in that both their first and second due process complaints raise issues about the adequacy of L.'s IEPs and the District's evaluation process for the provision of special education services. Moreover, the second due process complaint flows logically from the first one, as the second complaint alleges the District failed to do all the things the hearing officer ordered it to do after the first complaint was resolved.

To discern whether "the gravamen" of the Richardsons' new claims—though maintained under statutes other than the IDEA—require that they be brought before an IDEA hearing officer before being filed in court, the following passage from *Fry* is instructive:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit

---

[4] *Smith v. Robinson*, 468 U.S. 992 (1984).

could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756 (emphasis in original).

Under the instant facts, the hypothetical questions above must be answered in the negative. That further convinces the Court that the Richardsons' post-hearing claims must first be exhausted before the Arkansas Department of Education before being heard by this Court. For all these reasons, the Court finds that Counts II and III of the Complaint are premised on facts concerning: (1) the alleged bullying of L. and the District's response to such bullying and (2) the District's alleged failure to comprehensively evaluate L. and provide reasonable IEPs during the time period that was considered by the administrative hearing officer with respect to the first due process complaint.

### 1. Bullying

In the District's summary judgment brief, it cites to the hearing officer's summary of the incidents of bullying claimed by the Richardsons, as well as the District's response or lack of response to the bullying. The District then argues that these facts are insufficient to establish any genuine, material question of liability for violations of § 504 or the ADA. As the Court observed previously, citing to the hearing officer's record of the facts was sufficient to meet the District's initial burden on Rule 56. The burden then shifted to the Richardsons to "discard the shielding cloak of formal allegations and meet proof with proof" as to the bullying claims. *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 909 (8th Cir. 2010) (quotation and citation omitted).

Before examining the Richardsons' proof, the Court turns to the District's argument about the preclusive effect the Court ought to give to the hearing officer's findings about

bullying. The District argues that since the hearing officer found that the bullying allegations did not amount to a violation of the IDEA and a denial of FAPE, the Court should give those findings preclusive effect with respect to the claims in Counts II and III, since the hearing officer's decision was not successfully appealed by the Richardsons and is now to be considered "final." Though the District's argument is an interesting one, there is no need for the Court to take it up here. The Richardsons' response to summary judgment—or lack thereof—provides enough basis for the Court to find that they failed to meet their burden under Rule 56 to establish the existence of any genuine, material dispute of fact regarding bullying that would demonstrate that "school officials acted in bad faith or with gross misjudgment." *Birmingham*, 220 F.3d at 856.

In particular, the Richardsons' statement of facts (Doc. 42) contains no facts about bullying or facts that purport to show that L. suffered a hostile and abusive environment at school. Tonya Richardson's affidavit (Doc. 42-1) states nothing about bullying. Her affidavit is confined to facts showing how the District allegedly failed in its educational obligations to L. after the hearing officer issued his opinion. *Id.* Mrs. Richardson's ninety-three-page deposition (Doc. 42-2) and Mr. Chad Richardson's fifty-one-page deposition (Doc. 42-3) are attached to the brief in opposition to summary judgment, but the brief itself does not refer the Court to any portion of either deposition. As the Seventh Circuit observed, "[j]udges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) (per curiam), and they "need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce," *Northwestern Nat'l Ins. Co. v. Baltes,* 15 F.3d 660, 662–63 (7th Cir. 1994).

Another item attached to the brief is an expert report by Dr. Howard M. Knoff (Doc. 42-4), which is also the subject of a *Daubert* motion filed by the District (Doc. 49). Without deciding the admissibility of Dr. Knoff's opinions or ruling on the *Daubert* motion, the Court notes that the report is sixty-three pages long, and, again, *no portion of it* is discussed in the Richardsons' brief. In fact, the only reference to the report appears in the last sentence of the brief, just before the "Conclusion" section, as follows: "*See generally* Ex. D (Expert Report), at 48-57 (describing the specific and pervasive failures of the District in this case, as well as the proper practices and standards)." (Doc. 41 at 10). Any facts about bullying cited in Dr. Knoff's report are lifted, verbatim, from the hearing officer's opinion. As Dr. Knoff was not an eyewitness to any of the bullying incidents and is not qualified to offer legal opinions, the report itself cannot serve as a proxy for the Richardson's lack of response on summary judgment.

Left only with the facts about bullying as recounted by the hearing officer, the Court finds that those facts, when taken in the light most favorable to the Richardsons, do not establish a violation of § 504 or the ADA as a matter of law. As previously stated, to prove § 504 and ADA claims based on educational services for a disabled child, there must be evidence that "school officials acted in bad faith or with gross misjudgment." *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). In order to avoid summary judgment, the Richardsons must raise a genuine, material question of fact that shows that the District's conduct in response to allegations of bullying "depart[ed] substantially from 'accepted professional judgment, practice or standards [so] as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment.'" *B.M. ex*

*rel. Miller v. S. Callaway R–II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (internal citations omitted; alterations in original).

The record reveals there were four incidents of alleged bullying. (Doc. 1-2 at 44-45). They are summarized by the hearing officer in his opinion as follows:

(1) "[L.] was bullied by another peer. The incident upset [L.], and Hicks [L.'s science teacher] called Parents to request that they pick up [L.] from school. When Parents arrived to pick up [L.], Hicks told Parent (father) that another Student had picked on [L.] and that another teacher, Robinson, had disciplined the child at fault. Hicks assured Parent (father) that steps would be taken to ensure that there were no other similar incidents."

(2) "[D]uring the first week of October, 2016, [L.] told Hicks that he felt bullied by another Student. When asked details about the incident, [L.] told Hicks that another peer had told [L.] that he needed to put his name on a class paper. Hicks took action and informed the appropriate teacher of the incident."

(3) "Parents assert that [L.] was bullied in keyboarding class by his keyboarding teacher, Perry. There was testimony that [L.] was experiencing tics in class and Perry instructed [L.] to stop moving in his seat. Parent (father) testified that he went to the school on October 3, 2016 to address this issue with Perry. In discussing the issue with Parent (father), Perry admitted that she had told [L.] to stop moving in his seat. She explained that she did not know that [L.] had a diagnosis of Autism Spectrum Disorder."

(4) "Parents alleged that [L.] was being picked on in Dillon's class and that Dillon was non-responsive to [L.'s] requests for assistance. Parents also alleged that Dillon required [L.] to sit on a bean bag chair in her classroom when [L.] continued to tell Dillon that he was being bullied."

*Id.* at 45.

The Court, having reviewed all the facts surrounding these incidents, as set forth in detail by the hearing officer, finds that none of these incidents demonstrates bad faith or gross misjudgment by District staff or administrators. None of the incidents, even assuming they happened exactly as the hearing officer recounted, create a jury question

as to a possible violation of § 504 or the ADA. The Richardsons elected on summary judgment to rest only on the facts on bullying as recounted by the hearing officer, and those facts simply do not form a basis for liability as to either Count II or Count III.

### 2. Failure to Comprehensively Evaluate L and Provide Reasonable IEPs

The Richardsons also argue that the District violated § 504 and the ADA when it failed to provide L. with adequate IEPs, educational services, evaluations, and programming suited to his capabilities and in line with his disabilities. The Court views the facts surrounding these claims as temporally limited. *See* Section III.B., *supra*. The Court will therefore consider whether the failure to provide adequate IEPs, educational services, evaluation, and programming during the time period *prior to* the hearing officer's issuance of his opinion could potentially constitute a violation of § 504 or the ADA as a matter of law.

The Court assumes for purposes of summary judgment that the District violated the IDEA and failed to provide L. with FAPE, just as the hearing officer found in his opinion. The legal question is whether there are any facts in the summary judgment record to show that the District did "something more" than merely fail to comply with the IDEA. For liability to attach under both § 504 and the ADA, "[t]he defendant's statutory non-compliance must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent." *B.M. ex rel. Miller*, 732 F.3d at 887.

The Richardsons contend that the facts that prove the District's "failure to educate, specifically a failure to conduct necessary evaluations and to develop and implement an appropriate IEP," (Doc. 41 at 5), are sufficient to create a jury question as to whether the

District violated § 504 and the ADA. The Court disagrees. The Richardsons have pointed to no facts in the summary judgment record that, even when taken in the light most favorable to them, would indicate that any District staff member or administrator acted in bad faith or with wrongful intent to violate the IDEA in failing to comprehensively evaluate L. and provide IEPs reasonably calculated to enable him to make academic progress. The facts at most indicate the District's statutory non-compliance with the IDEA, which is not the same as intentional discrimination. Ordinary negligence on the part of educators is insufficient as a matter of law to establish a genuine, material dispute of fact as to a § 504 or ADA violation. *Birmingham*, 220 F.3d at 856 (defining the legal standard as bad faith or gross misjudgment).

## IV. CONCLUSION

For all the reasons explained herein, **IT IS ORDERED** that Defendant Omaha School District's Motion for Summary Judgment (Doc. 36) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**. Judgment shall enter concurrently with this Order.

**IT IS FURTHER ORDERED** that all other pending motions are **MOOT**.

**IT IS SO ORDERED** on this 30th day of April, 2019.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE